IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-06-00025-CV

 

In re
Olshan Foundation Repair Company of Dallas, LLC d/b/a Olshan Foundation Repair
Company

 

 



Original Proceeding

 



DISSENTING Opinion










 

      This dissenting opinion will be divided
into two principal sections.  The two sections will address the problems with
the majority opinion and state what I consider to be a proper analysis of the
issue.

Problems With the
Majority Opinion

      I will begin my analysis with the problems
in, and the problems avoided by, the majority opinion.  The majority opinion,
to the casual reader, would appear uncontroversial and straight­forward.  It is
neither.

      The first thing the casual reader will not
see, which is also a controversial part, goes to the core of our advocacy
system.

      The United States legal system has two
very well-recognized concepts.  The system is based upon judicial restraint. 
“We cannot raise points of error sua sponte.  As the Texas Supreme Court
recently reiterated, our task is to consider only those issues presented by the
parties.  Walling v. Metcalf, 863 S.W.2d 56, 58 (Tex. 1993).”  Madeksho
v. Abraham, Watkins, Nichols & Friend, 57 S.W.3d 448, 455 (Tex. App.—Houston [14th Dist.] 2001, pet. denied).  “Historically, [the Texas Supreme Court] ha[s]
used the term ‘fundamental error’ to describe situations in which an appellate
court may review error that was neither raised in the trial court nor assigned
on appeal.  In light of [the Supreme Court’s] strong policy considerations
favoring preservation, [that Court] ha[s] called fundamental error ‘a
discredited doctrine.’”  In re B.L.D., 113 S.W.3d 340, 350 (Tex. 2003), cert.
denied sub nom. Dossey v. Tex. Dep’t of Protective & Reg. Servs., 541
U.S. 945 (2004) (B.L.D. quoting Cox v. Johnson, 638 S.W.2d 867,
868 (Tex. 1982) (per curiam)) (internal citations omitted); but see Pena v.
State, No. PD-0966-05, 2006 Tex. Crim. App. LEXIS 832, at *8 (Tex. Crim. App. Apr. 26, 2006) (“[A]ppellate courts are free to review ‘unassigned error’—a
claim that was preserved in the trial below but was not raised on appeal.”).  Generally,
judges are limited to answering the question presented, and only the question
presented.  Another well-recognized concept is that the lawyers, as advocates
for the parties, give their clients the advice and counsel that the lawyers
believe is appropriate, and work with the clients to implement a litigation
strategy.  When they choose to forego a position, argument, or objection, it is
forfeited or waived.  This second concept has led to the rules regarding error
preservation.  See Tex. R. App.
P. 33.1.

      Both of these core concepts are violated
by the majority opinion.  Justice Vance has identified what he has determined
is an issue, found what he believes is controlling case authority, and made his
argument to the other member of the Court, Justice Vance having found one who
has agreed with his argument, and they have now voted that their answer to his
issue is the correct one.  I disagree.  I disagree with both the procedure and
the answer.  By this procedure, he has implemented a trial/litigation strategy
for a party without the party’s request, deciding an issue the parties did not
ask to have answered.  I also think that the majority reached the wrong answer.

      Specifically, the issue of whether the Federal
Arbitration Act was “invoked” was not raised by either party.  See Federal
Arbitration Act, 9 U.S.C. §§ 1-16 (2000) (“FAA”).[1]  Thus, if that issue needed to be raised or otherwise
were forfeited, it has been forfeited.  Of course, if it has to be raised, that
presumes that it must be raised by a party—not a member of an appellate court
as has been done in this case.

      But could it be one of those rare issues
that we can raise on our own?  If it is a jurisdictional issue, it could be
that it is entirely proper for this Court to raise the issue of its
jurisdiction.  Krumnow v. Krumnow, 174 S.W.3d 820, 825 (Tex. App.—Waco
2005, pet. filed); see M.O. Dental Lab v. Rape, 139 S.W.3d 671, 673 (Tex. 2004).  This is where and why I must address the result and specifically the case from
this Court on which the majority relies.

      In order for me to do this efficiently,
the reader must understand that there is a procedural anomaly in Texas for obtaining relief from a trial court’s refusal to order a case to arbitration.  If
the underlying dispute involves interstate commerce, the FAA controls the
procedure.  See 9 U.S.C. §§ 1-16.  The procedure to obtain
immediate review of the trial court’s refusal to order the case to arbitration
under the FAA is by mandamus.  The order denying a referral to arbitration is
not a final order and, under the FAA, there is no right to an interlocutory
appeal.

      If the underlying dispute does not involve
interstate commerce, the Texas Arbitration Act (“TAA”) controls the procedure. 
See Tex. Civ. Prac. & Rem.
Code Ann. §§ 171.001-171.003, 171.021-171.098 (Vernon 2005).  The
procedure to obtain immediate review of the trial court’s refusal to order the
case to arbitration under the TAA is by direct appeal.  Id. § 171.098(a)(1)
(Vernon 2005).  Even though the order denying arbitration is not final, the TAA
expressly provides the right to an interlocutory appeal.  See id.  Thus,
a party cannot use a mandamus proceeding because, under the TAA, it has a
remedy by direct appeal.

      The case relied upon by the majority is Neatherlin
Homes.  See In re Neatherlin Homes, Inc., 160 S.W.3d 82 (Tex. App.—Waco
2004, orig. proceeding).  The concept Neatherlin Homes is cited for is:

Because Olshan admittedly (Relator’s Petition at
p. 20) did not “invoke” the FAA or raise its applicability in the trial court,
we deny the petition regarding Olshan’s arbitration motion.

(Majority op. at 2 (internal footnote omitted).)[2]  In Neatherlin Homes, we dismissed a
mandamus proceeding, not because Neatherlin Homes did not invoke the
FAA, but because Neatherlin Homes had sought relief from the trial court only
under the TAA.  Because Neatherlin Homes had only sought relief under the TAA,
its avenue of relief for the trial court’s failure to grant arbitration under
the TAA was by way of direct appeal, not mandamus.  Neatherlin Homes at
83.  Because it had sought mandamus relief seeking to compel arbitration only
under the TAA, it had, by the procedural vehicle it chose, deprived us of
jurisdiction to grant any relief by mandamus.

      So, with a little spin on the holding in Neatherlin
Homes, the holding is flipped from invoking-only-the-TAA-deprives-us-of-mandamus-jurisdiction
to equate to the-failure-to-invoke-the-FAA-deprives-us-of-mandamus-jurisdiction. 
The two are not equal.

      Olshan never specifically invoked either
the FAA or the TAA at trial.  It did not have to do so.  Review by direct
appeal or mandamus is not relevant in the trial court.  Olshan did, however,
take steps to protect itself from the very outcome brought about by the
majority.  Not only did Olshan introduce evidence that the contract involved
interstate commerce, an allegation and fact relevant for making the FAA applicable,
Olshan took the belt-and-suspenders approach to obtain review of the order. 
Olshan filed both a direct appeal and a petition for writ of mandamus to obtain
review of the trial court’s refusal to refer the matter to arbitration.  That
is a common approach when it may be unresolved whether interstate commerce is
involved, which determines whether the TAA or the FAA is applicable.  See,
e.g., In re Nexion Health at Humble, Inc., 173 S.W.3d 67, 68 (Tex. 2005) (orig. proceeding).

      We docketed the direct appeal as Olshan
Foundation Repair Co. of Dallas LLC v. Seay, No. 10-06-00010-CV, 2006 Tex.
App. LEXIS 2202 (Tex. App.—Waco Mar. 22, 2006, no pet.) (mem. op.).  We
docketed the mandamus petition as the instant proceeding.  In the latter, this
Court did not question its jurisdiction; rather, we asked for a response from
the real party in interest.  See Tex.
R. App. P. 52.4.  Then, after briefing in this mandamus proceeding, and after
the real party in interest did not seek dismissal for want of jurisdiction of
this proceeding in its brief, Olshan advised the Court that it no longer wished
to pursue the direct appeal.  Olshan Found. Repair v. Seay at *1.  The
direct appeal was dismissed.  Id.  That was the implementation of
entirely appropriate litigation strategy by Olshan—strategy that a
majority of this Court has now circumvented.

      Ultimately, disposition of this proceeding
by dismissal for want of jurisdiction is only proper if the contract transaction
did not involve interstate commerce and, therefore, the FAA was not
applicable.  See 9 U.S.C. §§ 1-2.  The uncontroverted evidence in
the record is that interstate commerce was involved.  Therefore, dismissal for
want of jurisdiction is erroneous.

      The procedural problem in this disposition
is that if we had notified the parties of the perceived problem, they could
have briefed the issue, directed us to the relevant evidence of interstate
commerce, and continued with their own litigation strategy, uninterrupted.  That
is the proper procedure under Texas Rule of Appellate Procedure 38.9(b). 
Instead, I had to carry this burden by responding to the majority opinion.  I
have previously suggested the proper procedure but was rejected.  See Gonzales
v. State, Nos. 10-05-00222-CR & 10-05-00223-CR, 2006 Tex. App. LEXIS
2739, at *34-*35 (Tex. App.—Waco Apr. 5, 2006, no pet.) (Gray, C.J.,
dissenting).  More recently, the majority has been reversed for the failure to
allow the parties to address perceived briefing deficiencies.  See Pena, 2006
 Tex. Crim. App. LEXIS 832, at *7-*16.  The briefing deficiency perceived by
the majority in this proceeding could have been easily overcome by expressly
invoking the FAA or even invoking the FAA as an alternative to the TAA, if that
were even necessary.  And after the petition is denied, if not corrected on
further review by the Supreme Court, all that will be necessary to bring this
back to us as a mandamus is a simple reference to the FAA in a motion to
arbitrate back in the trial court, and we are all right back where we were
before the majority’s interference.

      Thus, I cannot agree that Olshan’s
mandamus can be denied because Olshan has not expressly referred to the FAA in
the lower court when the FAA is clearly applicable and we have not given Olshan
the opportunity to address the issue in briefs.  I therefore dissent from the
procedure used and the result obtained by the majority.

Proper Analysis

      This
brings us to the proper analysis of the issues presented in this mandamus
action.

      Olshan Foundation Repair Company of Dallas performed foundation work on a house owned by Perrin.  The foundation work came
with a transferable warranty.  Perrin sold the house to the Seays.  The Seays
had Olshan perform work under the warranty.  The Seays sued Olshan and alleged
that Olshan breached the express warranty and alleged other causes of action. 
Olshan filed a motion to dismiss pursuant to the Texas Residential Construction
Liability Act, see Tex. Prop.
Code Ann. §§ 27.001-27.007 (Vernon 2000 & Supp. 2005) (“RCLA”),
and a motion to compel arbitration, see 9 U.S.C. §§ 1-16.[3]  The trial court denied both motions.  Olshan
brings a petition for writ of mandamus to compel the trial court to grant the
motions.  We should conditionally grant the petition in part.

      “In Texas, a person may obtain mandamus
relief from a court action only if (1) the trial court clearly abused its
discretion and (2) the party requesting mandamus has no adequate remedy by
appeal.”  In re Living Ctrs. of Tex., Inc., 175 S.W.3d 253, 255-56 (Tex.
2005) (orig. proceeding); accord In re Prudential Ins. Co., 148 S.W.3d
124, 135-36 (Tex. 2004) (orig. proceeding); Walker v. Packer, 827 S.W.2d
833, 839 (Tex. 1992) (orig. proceeding); Johnson v. Fourth Court of Appeals,
700 S.W.2d 916, 917 (Tex. 1985) (orig. proceeding).

      Olshan contends that the trial court
abused its discretion in denying Olshan’s motion to compel arbitration. The
Seays argue that Olshan did not produce a copy of the agreement signed by
Perrin, that Perrin did not knowingly agree to arbitration, and that an
arbitration agreement between Olshan and Perrin would not be binding on the
Seays. 

      “Mandamus relief is available when a trial
court erroneously denies a motion to compel arbitration under the FAA.”  In
re Dillard Dep’t Stores, Inc., 186 S.W.3d 514, 515 (Tex. 2006) (orig.
proceeding) (per curiam); accord In re FirstMerit Bank, N.A., 52 S.W.3d
749, 753 (Tex. 2001) (orig. proceeding).  “[A] party seeking to compel
arbitration under the FAA must establish that: (1) there is a valid
arbitration agreement, and (2) the claims raised fall within that
agreement’s scope.”  Dillard Dep’t Stores at 515 (quoting In re Kellogg
Brown & Root, Inc., 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding))
(alteration in Dillard Dep’t Stores).  

        “Because arbitration is contractual in
nature, the FAA generally ‘does not require parties to arbitrate when they have
not agreed to do so.’”  Kellogg Brown & Root, 166 S.W.3d at 738)
(quoting Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior
Univ., 489 U.S. 468, 478-79 (1989)).  “Federal and Texas state courts have
recognized, however, that ‘[i]t does not follow . . . that under the
[FAA] an obligation to arbitrate attaches only to one who has personally signed
the written arbitration agreement’; instead, under certain circumstances,
principles of contract law and agency may bind a non-signatory to an
arbitration agreement.”  Kellogg Brown & Root at 738 (quoting Fisser
v. Int’l Bank, 282 F.2d 231, 233 (2d Cir. 1960)) (alteration in Kellogg
Brown & Root).  Moreover, “[a]lthough the FAA requires an arbitration
agreement to be written, it does not expressly require the agreement to be
signed by the parties.”  In re Big 8 Food Stores, Ltd., 166 S.W.3d 869,
876 (Tex. App.—El Paso 2005, orig. proceeding) (citing 9 U.S.C. § 3 (1999)
& Valero Ref., Inc. v. M/T Lauberhorn, 813 F.2d 60, 63-64 (5th Cir.
1987)); In re Bunzl USA, Inc., 155 S.W.3d 202, 210 (Tex. App.—El Paso
2004, orig. proceeding [mand. denied]).  “Nevertheless, a party seeking to
enforce a purported arbitration agreement must establish that the parties
agreed to arbitrate the dispute.”  Big 8 Food Stores at 876 (citing Am.
Heritage Life Ins. Co. v. Lang, 321 F.3d 533, 537 (5th Cir. 2003)); Bunzl
USA at 210.

      “[A] nonparty may be compelled to
arbitrate ‘if it seeks, through the claim, to derive a direct benefit from the
contract containing the arbitration provisions.’”  In re Weekley Homes, L.P.,
180 S.W.3d 127, 131 (Tex. 2005) (orig. proceeding) (quoting Kellogg
Brown & Root, 166 S.W.3d at 741).  “[A] litigant who sues based on a
contract subjects himself or herself to the contract’s terms.”  Weekley
Homes  at 131 (quoting FirstMerit Bank, 52 S.W.3d at 755).

      “Absent fraud, misrepresentation, or
deceit, a party is bound by the terms of the contract he signed, regardless of
whether he read it or thought it had different terms.”  In re McKinney, 167 S.W.3d 833, 834 (Tex. 2005) (orig. proceeding) (per curiam).  

      The foundation-repair agreement stated, “A
LIFETIME TRANSFERABLE WAR­RANTY IS ATTACHED TO, AND IS A PART OF, THIS CONTRACT
. . . .”  The agreement also stated, “Notwithstanding, any
provision in this agreement to the contrary, any dispute, controversy, or
lawsuit between any of the parties to this agreement about any matter arising
out of this agreement, shall be resolved by mandatory and binding arbitration
. . . .”  Perrin testified that he signed the agreement and returned
it to Olshan.  The Seays repeatedly availed themselves of the warranty.  The
Seays have also sued for breach of the warranty.

      Olshan established a valid agreement
containing an arbitration clause.  The Seay’s breach-of-express-warranty suit
is within the scope of the arbitration clause.  In seeking to derive a benefit
from the agreement’s warranty, that suit subjects the Seays to arbitration
under the agreement’s arbitration clause.  The trial court clearly abused its
discretion in denying Olshan’s motion to compel arbitration.  

      As to Olshan’s RCLA argument, the
application of the RCLA is a matter for arbitration.   See, e.g., Home
Buyers Warranty Corp. v. Ward, No. 05-97-00807-CV, 1999 Tex. App. LEXIS
7727, at *9-*11 (Tex. App.—Dallas Oct. 18, 1999, no pet.) (not designated for
publication) (arbitrators decided that RCLA did not apply).  “Defenses that
pertain to the entire . . . contract can be arbitrated.”  FirstMerit
Bank, 52 S.W.3d at 756; accord Prima Paint Corp. v. Flood & Conklin
Mfg. Co., 388 U.S. 395, 403-404 (1967).  

      We should conditionally grant a writ of
mandamus ordering Respondent to vacate his order of November 27, 2005; and
order him to render an order granting Olshan’s motion to compel arbitration and
send a copy thereof to this Court within three days of the date it is signed. 
The writ should issue only if Respondent fails to do so within 20 days of the
date of this opinion.

Conclusion

      I dissent.  I really dissent.

TOM GRAY

Chief Justice

Dissenting opinion
delivered and filed June 21, 2006









[1]  If
the application or non-application of the FAA is a substantive argument, as
argued by the majority, (see majority op. n.2), then it is all the more
clear that the members of the majority have left their role in the judiciary
and become advocates for a party, something they have improperly done before.





[2]
The per-curiam majority overstates, as it is prone to do, Olshan’s
admission regarding invoking the FAA.  The majority’s statement is not an
accurate representation of what is in the petition.  The petition simply states
that the issue was not addressed or determined by the trial court. 
(Pet. & Br. at 20 (“[B]ecause the application of the FAA or the TAA was
never addressed or determined by Respondent, Relator did not present any such
evidence of the Agreement’s effect on commerce to Respondent.”).)  At no point
does Olshan admit that it did not “invoke” the FAA as stated by the majority. 
Indeed, I have been unable to find the term “invoke” used in Olshan’s petition,
so I do not know what the majority is purporting to quote.  





[3]  The
parties do not dispute that the FAA governs.